IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 28, 2003

## SPARKLE DAVID MUNSEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Claiborne County**
**No. 11087     O. Duane Slone, Judge**

---

**No. E2002-02929-CCA-R3-PC**
**March 25, 2004**

---

The petitioner, Sparkle David Munsey, appeals the trial court's denial of his petition for post-conviction relief.  In this appeal, he contends that (1) he did not knowingly, voluntarily, and intelligently waive his right to counsel and (2) his sentence should be vacated because the trial court failed to advise him of his right to appeal pursuant to Federal Rule of Criminal Procedure 32(A)(2).[1] The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee (on appeal); and Benjamin S. Pressnell, Tazewell, Tennessee (at trial), for the appellant, Sparkle David Munsey.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; and John Galloway, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On December 9, 1997, the petitioner entered pleas of guilty to three counts of aggravated rape, one count of especially aggravated kidnapping, and one count of especially aggravated robbery. At the submission hearing, the state summarized the facts as follows:

---

[1]Under the current version of the Federal Rules of Criminal Procedure, the provision cited by the petitioner is Federal Rule of Criminal Procedure 32(j)(B), and provides that "[a]fter sentencing--regardless of the defendant's plea--the court must advise the defendant of any right to appeal the sentence."

[T]he victim . . . Mary Ann Medley, . . . would testify that she was abducted from her home, which is located in the Speedwell area of Claiborne County, by the [petitioner] while he used a screwdriver.

[H]e bound her hands and forcibly placed her in a stolen pickup truck, wherupon he drove her to three separate and distinct areas in Claiborne County and committed sexual penetration against her, forcibly, without her consent.

The first act would have been in the Gap Creek area of Claiborne County, at which time he took her in a wooded area and forced her to have sexual intercourse.

The second separate and distinct act of rape was the [petitioner] took her to an area in Claiborne County near the Patterson home and forced her to commit, to do fellatio on him.

The third act . . . , occurred in the Red Hill area of Claiborne County where the [petitioner], after loading and forcibly putting her in the back [of] the pickup truck, drove her to Red Hill and forced her to have sexual intercourse with him again.

During the time of this abduction and acts of rape, the [petitioner] took certain items of jewelry from her, . . . with the hand of a screwdriver stuck into her side, and, thereby, committing the offense of especially aggravated robbery.

The trial court imposed concurrent thirty-two-and-one-half-year sentences. The petitioner did not appeal the convictions or the resulting sentences.

In September of 1998, the petitioner filed this petition for post-conviction relief, alleging that the waiver of his right to counsel, which took place two days before he entered his pleas of guilty, was neither knowing nor voluntary because he was mentally incompetent. He contended that his guilty pleas were not voluntary, knowing, and intelligent because he did not understand the charges or possible penalties and because the trial court did not advise him of his right to appeal pursuant to Federal Rule of Criminal Procedure 32. The petitioner also complained that the indictment was void because the District Attorney General failed to sign each count.

At the evidentiary hearing, the petitioner, when asked whether the entry of his guilty pleas was voluntary, responded, "I'd have to say so." He did, however, contend that he was unable to get a lawyer to present a defense on his behalf. He insisted that he did not understand the nature of the charges against him and that he believed that he had no right to appeal. The petitioner acknowledged that even if he had been informed of his right to appeal the sentence, he would have pled guilty. He claimed that he was taking Ativan, Vistaril, Prozac, lithium, and Haldol for his mental illness while incarcerated in the Claiborne County jail prior to the entry of his pleas. The petitioner contended that he was over medicated during court appearances and, at times, unable to speak.

During cross-examination by the state, the petitioner testified that he was coerced into pleading guilty because of the "torture" he had suffered in jail. He further claimed that Attorney Herman, who was originally appointed as his counsel, informed him that "the people of Claiborne County don't want to hear anything you have to say as a defense." The petitioner, who was diagnosed with paranoid schizophrenia, admitted that mental health officials had conducted an

-2-

evaluation and determined that he was competent to stand trial and sane at the time of the crimes. Although he complained about the length of the examination, the petitioner conceded that a psychologist hired by Attorney Herman also concluded that the he was competent to stand trial and that he was not insane at the time of the crimes. The petitioner acknowledged that the trial court, after granting his request to proceed pro se, asked Attorney Herman to remain as "elbow counsel" and also appointed Attorney Estep in that same capacity.

The petitioner claimed that Attorney Estep instructed him that he had to plead guilty and that any commentary would increase his "sentence from thirty-two automatically to fifty years [and] [a]ny more words I use will add another ten years to my sentence." The petitioner admitted that he kidnapped, raped and robbed the victim while wielding a screwdriver as a deadly weapon but contended that he would have relied on his mental illness, drug abuse, and violent childhood as defenses had he gone to trial. He conceded that he did "not necessarily" believe that he would have been acquitted had he presented those defenses. The petitioner also acknowledged that he received the sentence that was contemplated by the plea agreement and admitted that because of his lengthy criminal history he had a familiarity with the criminal justice system.

Attorney Herman, who was appointed to represent the petitioner at trial, testified that he visited the petitioner in jail many times, counseled with him, and answered all of his questions. He recalled that, shortly before the scheduled trial date, he became aware that the petitioner had filed documents pro se, alleging a communication problem. He also understood that the petitioner wanted another Assistant Public Defender to represent him because of a perceived conflict of interest and ultimately asked to be allowed to proceed pro se. Attorney Herman testified that the psychologist he had hired to conduct a mental evaluation concluded that the petitioner was both competent to stand trial and sane at the time of the crimes. He described the petitioner as always alert and well-oriented at their conferences, displaying no indication of intoxication or mental illness. According to Attorney Herman, the petitioner did not appear to be under the influence of drugs at the time of his guilty pleas. He recalled that Attorney Estep read the plea agreement to the petitioner, explaining that he would receive a fixed sentence of thirty-two-and-one-half years in exchange for his pleas. It was Attorney Herman's opinion that the plea agreement was favorable to the petitioner. It was his belief that had the petitioner gone to trial and been convicted, he would have received a much greater sentence.

Attorney Estep, who assisted as elbow counsel after the trial court granted the petitioner's request to proceed pro se, testified that the state had originally offered to settle the case in exchange for a forty-year sentence but eventually had agreed to a thirty-two-and-one-half-year sentence. It was Attorney Estep's belief that the petitioner would have been convicted at trial and that he likely would have received a greater sentence. He specifically recalled that he had discussed the possibility of presenting an insanity defense with the petitioner and had advised the petitioner that he did not believe that such a defense would be successful. It was his opinion that the petitioner was not under the influence of an intoxicating medication at the plea submission hearing. Attorney Estep testified that the petitioner had waived his right to appeal as a part of the plea agreement.

At the conclusion of the hearing, the post-conviction court determined that the petitioner failed to meet his burden of proving his claims by clear and convincing evidence. As to the petitioner's claim that his lack of knowledge of his right to appeal the sentence rendered his pleas involuntary, the post-conviction court ruled that the petitioner acknowledged that he would have pled guilty "whether he had been explained that right or not" and that he had signed the plea agreement, which included a waiver of the right to appeal. As to his claim that he did not voluntarily waive his right to counsel, the post-conviction court found that the trial court had conducted a proper inquiry into the petitioner's request to proceed pro se. Finally, the post-conviction court concluded that the petitioner had received a favorable outcome primarily through the assistance of Attorney Herman and Attorney Estep.

In this appeal, the petitioner asserts that the waiver of the right to counsel was not voluntary because the trial court failed to sufficiently inform him of the availability of the insanity defense. He insists that his guilty pleas were not voluntary because the trial court failed to advised him of the right to appeal the sentence pursuant to Federal Rule of Criminal Procedure 32.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990); Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

As to the first issue, the petitioner did not assert in either his petition for post-conviction relief or at the evidentiary hearing that the waiver of his right to counsel was not voluntary because the trial court did not sufficiently inform him of the right to pursue an insanity defense. Instead, the petitioner argued that the waiver was not voluntary because he was mentally incompetent. A petitioner may not assert one ground for relief in the trial court and then pursue a new or different theory on appeal. See State v. Adkisson, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994). From that perspective, the petitioner has waived our consideration of this issue. Further, the petitioner is not entitled to relief on the merits of his claim.

Every person has a constitutional right to represent himself. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Faretta v. California, 422 U.S. 806, 818-820 (1975). In State v. Herrod, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988), this court ruled that before an accused may exercise the right of self- representation, three conditions must be met:

(1) The defendant must timely assert his right to self-representation;
(2) the exercise of the right must be clear and unequivocal; and
(3) the defendant must knowingly and intelligently waive his right to assistance of counsel.

A defendant need not have legal training or experience in order to competently and intelligently elect self-representation. Faretta, 422 U.S. at 835.

When an accused desires to proceed pro se, the trial judge must conduct an intensive inquiry as to his ability to represent himself. State v. Northington, 667 S.W.2d 57, 61 (Tenn. 1984). Further, as indicated, the waiver of the right to counsel must be knowingly and intelligently made. Tenn. R. Crim. P. 44; State v. Armes, 673 S.W.2d 174, 177 (Tenn. Crim. App. 1984). The United States Supreme Court has placed "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver" directly upon the trial judge. Johnson v. Zerbst, 304 U.S. 458, 465 (1938). Later, the Court established more specific guidelines:

> A judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

Von Moltke v. Gillies, 332 U.S. 708, 723-23 (1948).

Rule 44 of the Tennessee Rules of Criminal Procedure places a similar obligation on the trial court:

> Every indigent defendant shall be entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant executes a written waiver. Before accepting such waiver the court shall first advise the accused in open court of the right to the aid of counsel in every stage of the proceedings. The court shall, at the same time, determine whether there has

been a competent and intelligent waiver of such right by inquiring into the background, experience and conduct of the accused and such other matters as the court may deem appropriate. Any waiver shall be spread upon the minutes of the court and made a part of the record of the cause.

Tenn. R. Crim. P. 44(a); see also State v. Gardner, 626 S.W.2d 721, 723 (Tenn. Crim. App. 1981).

In Northington, our supreme court held that even though the trial court had addressed the seriousness of the charges, had advised the defendant that he would be held to the same standard as a lawyer, had determined the defendant's age and education level, had warned the defendant that proceeding pro se was unwise, and had assured itself that the pro se defendant had discussed the case with his appointed attorney, the trial court had "wholly failed to properly investigate [whether] the defendant understood the consequences of self-representation in light of the Von Moltke factors." Northington, 667 S.W.2d at 61 (internal quotation marks omitted). Our high court set aside the conviction, concluding that the trial court had "failed to diligently examine the defendant's background and experience, failed to notify defendant as to the possible extent of any penitentiary sentence, and failed to elaborate fully to defendant why he thought it 'unwise' to waive counsel." Id.

Later, in State v. Goodwin, 909 S.W.2d 35, 41 (Tenn. Crim. App. 1995), this court ruled that the waiver of the right to counsel was valid where the trial court inquired as to the defendant's age and education; warned that proceeding pro se would cause confusion; informed the defendant that an attorney would be provided for him; cautioned that the defendant would not have access to a law library and that his advisory counsel was not required to provide him with photocopies of relevant legal materials; told the defendant that the trial would proceed at the same pace and that he would be treated the same as if he were represented by counsel; and admonished the defendant that he was responsible for understanding the rules of evidence and local rules of court. This court ruled that Goodwin "clearly understood the hazards of representing himself." Id. Our panel also held that a trial court is not required to interrupt the trial to explain procedural rules, legal terms, or consequences of the litigant's actions.

In this case, the record demonstrates that the trial court informed the petitioner that he had the right to appointed counsel and that, if convicted, he could "expect to serve a tremendous amount of time in the state penitentiary." After the petitioner complained that his appointed counsel did not want to present character witnesses on his behalf, the trial court warned the petitioner of the dangers of placing his character at issue in the trial. The trial court observed that the petitioner was "articulate in speech" and inquired as to his mental health history. The petitioner stated that he was "[m]entally ill but not incompetent" and that he had been diagnosed with major depression, paranoid schizophrenia, and "personality disorders." The trial court discussed possible defenses with the petitioner, including the insanity defense, and warned him that an insanity defense would not likely be successful. The trial court further inquired as to the petitioner's familiarity with the judicial process and educational background. In response, the petitioner, who had by then drafted and filed a number of documents, insisted that he had a good command of reading and writing.

The record establishes that the trial court also asked Attorney Herman about the advice he had provided to the petitioner as to the charges, the possible defenses, and the potential length of sentence. Attorney Herman confirmed that the mental evaluation of the petitioner indicated that the insanity defense could not be supported. He specifically recalled that he had "prepared a chart and [gone] over this with [the petitioner] on each of the charges, each of the ranges, and that these were offenses that would carry a sentence of one hundred percent (100%), with no more than the possibility of a fifteen percent (15%) reduction in sentence." The trial court also permitted a continuance of the proceedings so that the petitioner could be evaluated by a clinical psychologist that had been hired by the defense. Finally, the trial court granted the petitioner's request to have Attorney Estep appointed as elbow counsel.

Under these circumstances, the evidence does not preponderate against the trial court's finding that the petitioner's waiver of his right to counsel was voluntary. Moreover, it appears that although the trial court granted the petitioner's request to proceed pro se, the petitioner never actually did so. Two days after the trial court granted the request, the petitioner entered his pleas of guilt in accordance with a plea agreement negotiated on his behalf by Attorney Herman and Attorney Estep, who were present at the submission hearing and, for all practical purposes, continued to assist the petitioner. In our view, the petitioner is not entitled to relief on this ground.

The petitioner also asserts that his guilty pleas were not voluntary, knowing, and intelligent because the trial court failed to advise him of his right to appeal the sentence pursuant to Federal Rule of Criminal Procedure 32. Citing United States v. Sanchez, 88 F.3d 1243 (D.C. Cir. 1996), the petitioner asserts that the trial court was required to advise him, pursuant to Federal Rule of Criminal Procedure 32, of his right to appeal the sentence even though he had entered into a plea agreement for a specific sentence. The petitioner cites no authority for his position that this particular rule should be applied to this state case.

Tennessee Rule of Criminal Procedure 37 provides that "[a]n appeal lies from . . . any judgment of conviction . . . upon a plea of guilty . . . if the defendant seeks review of the sentence and there was no plea agreement under Rule 11(e)." Tenn. R. App. P. 37(b)(2)(ii) (emphasis added). Because the petitioner entered into a plea agreement for a fixed sentence, he had no right to appeal the sentence. The trial court's failure to advise him of a right he did not possess does not render his pleas involuntary. Moreover, the record establishes that the plea agreement signed by the petitioner includes a written admonition of the waiver of his right to appeal the conviction and sentence. Finally, the petitioner acknowledged at the evidentiary hearing that he would have pled guilty even had he been advised of his right to appeal. Thus, he has failed to establish that he was prejudiced by the omission. Under these circumstances, the evidence does not preponderate against the finding of the post-conviction court that the petitioner's pleas were voluntary.

Accordingly, the judgment of the post-conviction court is affirmed.

_____

GARY R. WADE, PRESIDING JUDGE