Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 18, 2003      Decided November 25, 2003

No. 02-3065

IN RE: SEALED CASE

———

Appeal from the United States District
Court for the District of Columbia
(No. 00cr00425–21)

———

*Stephen C. Leckar*, appointed by the court, argued the cause for the appellant.

*Patricia A. Heffernan*, Assistant United States Attorney, argued the cause for the appellee. *Roscoe C. Howard, Jr.*, United States Attorney, and *John R. Fisher* and *Kenneth F. Whitted*, Assistant United States Attorneys, were on brief.

Before: SENTELLE, HENDERSON and TATEL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Following an undercover investigation into a cocaine distribution network in the Washington Metropolitan area, the appellant was ar-

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

rested in October 2000 on a parole violation and was charged in December 2000 along with twenty-four other people in a seventy-one count indictment. In July 2001, he pleaded guilty to conspiring to possess and distribute between 50 and 150 grams of cocaine in violation of 21 U.S.C. §§ 841 & 846, a crime that carries a mandatory minimum sentence of ten years. 21 U.S.C. § 841(b)(1)(A). In June 2002, the district court sentenced the appellant to a 65–month term of imprisonment, after granting the government's motion for a downward departure pursuant to 18 U.S.C. § 3553(e) and section 5K1.1 of the United States Sentencing Guidelines (Guidelines or U.S.S.G.). On appeal, the appellant claims that the sentencing court erred by failing to make sufficient findings regarding his requests for a downward adjustment to his base offense level pursuant to U.S.S.G. § 3B1.2 and for a downward departure from his criminal history category pursuant to U.S.S.G. § 4A1.3. We reject both claims and affirm the district court's sentence.

## I. BACKGROUND

In the December 2000 indictment, the appellant was charged with four separate offenses: conspiring to distribute cocaine base, cocaine and marijuana; unlawfully possessing with intent to distribute 5 grams or more of cocaine base; unlawful possession of ammunition by a fugitive; and unlawful possession of marijuana. In June 2001, he reached an agreement with the government to plead guilty to conspiring to distribute, and to possess with intent to distribute, between 50 and 150 grams of cocaine base, in violation of 21 U.S.C. § 846. As part of the plea agreement, the appellant agreed to cooperate with the government and, depending on the nature of that cooperation, the government agreed to move for a downward departure pursuant to 18 U.S.C. § 3553(e) and/or U.S.S.G. § 5K1.1. The appellant further agreed not to seek any downward adjustment or departure from his applicable sentencing range other than one based on his role in the offense pursuant to section 3B1.2 and the government maintained the right to oppose such an adjustment at sentencing.

On July 17, 2001, the appellant pleaded guilty to conspiring to distribute, and to possess with intent to distribute, between 50 and 150 grams of cocaine base. The presentence report calculated his base offense level at 32 and awarded him a 3–point downward adjustment pursuant to U.S.S.G. § 3E1.1 based on his guilty plea. The report did not recommend any role-in-the-offense adjustment to the appellant's offense level. Because his "involvement in the conspiracy was a pro-active and profitable one" and he actively conspired to distribute over 50 grams of cocaine base in the Washington Metropolitan area, the probation officer did not find the appellant qualified for a role-in-the-offense downward adjustment. Appellant's App. (App.) 133. On the other hand, because he did not "exercise[ ] any managerial or supervisory role within the conspiracy," the report concluded that his "level of participation [in the conspiracy] d[id] not warrant an aggravating . . . role [upward] adjustment" pursuant to section 3B1.1 App. 132.

In calculating the appellant's criminal history category, the report noted that he had two prior criminal convictions, one in 1994 for possession of cocaine and one in 1995 for carrying a firearm without a license. The convictions gave the appellant a criminal history score of four, which placed him in criminal history category III. The report also noted numerous other arrests from the time the appellant was 10 years old. Based on an adjusted offense level of 29 and a criminal history category of III, the appellant's guideline range stood at 108 to 135 months' imprisonment. Because the statutory mandatory minimum sentence for the appellant's base offense is 10 years, 21 U.S.C. §§ 841(b)(1)(A), however, his minimum guideline range could not go below 120 months; thus his applicable sentencing range was 120 to 135 months. U.S.S.G. § 5G1.1(c)(2).

In an undated letter to the probation officer, then-defense counsel[1] made several objections to the presentence report. In addition to correcting various factual errors, she claimed that the appellant deserved a four-level downward adjustment

---

[1] The appellant is represented by a different lawyer on appeal.

pursuant to section 3B1.2(a) because he sold drugs for the conspiracy's principal distributor "to pay off a drug debt and later forwarded street buyers to [the distributor] and in return received small quantities of crack cocaine for his personal use." App. 93. Because, she argued, "[r]ole in the offense determinations are based on a comparison between a defendant and the other persons in the instant offense[, a]s compared to others in the charged conspiracy, [the appellant] was at the very bottom." App. 94. She concluded: "No way [the appellant] could be seen as having anything but [a] minor role in the instant offense." *Id.*

In addition, defense counsel claimed the appellant's "criminal history points significantly over-represent 'the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes'" and therefore proposed a downward departure from criminal history category III pursuant to U.S.S.G. § 4A1.3. App. 95. She also asked the court to consider a downward departure based on his difficult childhood (U.S.S.G. § 5K2.0) and on threats his drug distributor allegedly made to him (U.S.S.G. § 5K2.12). All told, defense counsel requested a "sentence of time served"—which at the time amounted to roughly 20 months—plus probation. App. 96.

In an addendum to the presentence report dated June 13, 2002, the probation officer noted the appellant's proposed revisions regarding his role in the offense and criminal history but maintained that none was appropriate. With regard to the section 3B1.2 adjustment, the addendum stated that the appellant "actively engaged in a conspiracy to distribute cocaine base for over two years. Furthermore, the defendant acknowledged during the presentence interview that he continued to sell drugs for [the conspiracy's wholesale distributor], beyond just paying off a drug debt. The defendant engaged in repeated, ongoing drug distribution activities for one of the main players in this conspiracy." App. 148. With regard to the section 4A1.3 criminal history departure, the officer concluded that the appellant's "criminal history category accurately reflects the seriousness of [his] criminal history,

and most especially in this case, the likelihood that he will commit further crimes."   App. 148.

Shortly after the presentence report was finalized, the government filed a motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 for a downward departure based on the appellant's "substantial assistance" to the government.   According to the government, the appellant had participated in approximately three meetings with its investigators and ultimately provided information regarding the identity of the assailant in an unsolved, 1999 homicide.   Based on the appellant's information, the motion stated, the Metropolitan Police Department was subsequently able to confirm the assailant's identity and close that investigation.

Before sentencing and by undated letter to the court, defense counsel requested that the court sentence the appellant to time served plus five years of probation and repeated her objections to the presentence report.   The letter conceded that the appellant's "limited participation in the conspiracy limited his 'usefulness' to the government" but also highlighted the fact that the appellant was "eventually ... able to provide the government information about an unrelated crime" and that the government had filed a motion for a downward departure based on his assistance.   App. 99.   The letter also repeated the appellant's request for a downward adjustment pursuant to § 3B1.2 as well as for the downward departures originally sought.   Relying on caselaw from other federal circuits, defense counsel claimed that because the appellant was "peripheral to the success of the [overarching] conspiracy," the "*low man* on the indictment," and just "a crack head," a four-level downward adjustment pursuant to U.S.S.G. § 3B1.2(a) was appropriate.   App. 100–01 (emphasis in original).   Under a heading labeled "factors that may warrant a departure," defense counsel argued that the appellant was entitled to a criminal history downward departure pursuant to U.S.S.G. § 4A1.3(e)—because his criminal history score of 4 was the result of two misdemeanor convictions—as well as downward departures pursuant to §§ 5K2.0 and 5K2.12.   App. 101–02.   The government did not respond to the letter.

The appellant appeared for sentencing before the district court on June 21, 2002. The court began by granting the government's substantial assistance motion. The ruling appeared to take defense counsel by surprise for she addressed the court as follows: "Your honor, as we stand here today, the Court having granted the motion for departure, I guess the only thing we're really talking about is whether [the court] would go as low as [the appellant] would like which would be the time served or to some interim position." App. 158. She appealed for leniency based on the appellant's difficult upbringing and the changes that he had made in his life since being incarcerated. She concluded by stating that he "was a minor player in this conspiracy and I know he does have a number of arrests but all and all he is not the person I normally see with criminal history of three. Thank you." App. 163. During her extended argument, she never mentioned a section 3B1.2 adjustment, a section 4A1.3 criminal history departure or downward departures pursuant to sections 5K2.0 and 5K2.12.

After defense counsel finished and before the government took its turn, the court interjected that, while the government could proceed as it intended, the court sought specific guidance regarding where the appellant stood in relation to the several other people involved in the overall conspiracy, including one defendant who had gone to trial and one defendant whom the court had already sentenced. The court stated that it sought some "rationality" in sentencing so many people and that it wanted to avoid "the possibility" that, in applying the Guidelines, "a bigger fish could be sentenced to less punishment than a smaller fish." App. 164. The court therefore directed the government "in this case as well as all others" to "express based upon the evidence ... [where] on that continuum each defendant is." *Id.*

The government responded that the appellant "was an average player in this conspiracy. He was neither at the top nor at the bottom." *Id.* According to the government, the evidence at trial would have shown that the appellant was "somewhere in the middle" of the broad conspiracy, which the government then summarized: "There were several individu-

als at the top who we would call suppliers of the organization who didn't actually stand on the street and distribute hand-to-hand. Then there were some individuals involved who were merely one or two time couriers who would probably fall at the bottom of the conspiracy." *Id.* The appellant "was average in that he was a regular customer of [the wholesale distributor] and that he distributed street level quantities of crack cocaine but on a regular basis to make him the average conspirator." App. 164–65.

The government then proceeded as it had "intended," which "was to address several of the issues that [defense counsel had] raised in her sentencing memo[randum]." App. 165. It stated that to the extent the appellant sought a section 3B1.2 adjustment, the government had already addressed that claim, adding that the appellant "was not a minor or minimal player" "in the conspiracy" but instead "he was average." *Id.* It also noted that a comparison of the appellant to the conspiracy's wholesale distributor might make the appellant appear to be a minor participant but that under the Guidelines the distributor deserved an *upward* role-in-the-offense adjustment pursuant to section 3B1.1 whereas an average player like the appellant qualified for neither an upward nor downward adjustment. The government also noted that the appellant's plea agreement specifically precluded him from seeking any departures. It then highlighted his criminal history and the fact that he had been charged with other crimes in the indictment. The extent of the court's substantial assistance departure, the government urged, should be based on the nature of the appellant's cooperation, which was limited to helping to close a homicide case. It concluded by recommending a sentence range of 78 to 96 months.

In response, defense counsel minimized the appellant's criminal record, highlighted that he had cooperated as best he could and repeated that the time that he had already spent in prison had allowed him to turn around his life. There was, she argued, no "reason to continue his incarceration." App. 173. The court then heard from the appellant and his wife who both described how incarceration had changed him.

After a short recess, the court sentenced the appellant to a 65–month term of imprisonment followed by a five-year term of supervised release. In determining the sentence, the court noted several factors, including that it had taken "into consideration where in this conspiracy [the appellant] stood" and concluded that "the prosecutor is right, that is, that [the appellant was] about the middle." App. 181. The court noted that it was not the first time the appellant had been in criminal court and that, regardless of the impressive statements from his wife or his difficult upbringing, he had nonetheless committed criminal acts.

The court then inquired of all parties whether there was anything else that needed to be addressed. Defense counsel answered no. The government, however, noted that defense counsel had requested a downward adjustment pursuant to section 3B1.2 and that the government objected to it. The government presciently stated that it "would hate for [the section 3B1.2 adjustment issue] to come back if for some reason it was raised on appeal." App. 185. The court, however, rejected the notion: "All I can say is that I can't imagine how it would matter on appeal. I really can't. And, frankly, I don't look for work . . . . I hear what you're saying. But I'm not making any findings with respect to this [adjustment]—as a matter of fact, I'm not saying anything more about that." *Id.* On the government's request and with the appellant's agreement, the court sealed the record for two years based on the circumstances of the appellant's cooperation.

## II. DISCUSSION

The appellant claims that the district court erred by failing to explain its reasoning for rejecting his requests for a four-point, minimal-participant adjustment to his base offense level pursuant to section 3B1.2(a) and for a downward departure in his criminal history category pursuant to section 4A1.3. The appellant also challenges the court's denial of a two-point, minor-participant adjustment to his base offense level pursuant to section 3B1.2(b). We reject his challenges and affirm.

We have previously held that plain error review is appropriate when the appellant fails to raise a claim at his sentencing hearing or when he fails to object to the district court's ruling. Fed. R. Crim. P. 52(b); *United States v. Dozier*, 162 F.3d 120, 125–26 (D.C. Cir. 1998) ("plain error" review of district court's failure to explain denial of adjustment where appellant did not object to district court's ruling); *United States v. Dawson*, 990 F.2d 1314, 1316 (D.C. Cir. 1993) (per curiam) ("We have consistently declared that if a defendant fails to except to the district court's ruling on a specific ground, we will review the district court's ruling only for plain error."); *see United States v. Draffin*, 286 F.3d 606, 607–08 (D.C. Cir. 2002) ("plain error" review for unrequested downward departure). Here, not only did defense counsel fail to raise the claims now on appeal at sentencing or object to the district court's rulings, she remained silent even after the government brought up the section 3B1.2 issue at the close of the hearing. *United States v. Pinnick*, 47 F.3d 434, 439 (D.C. Cir. 1995) ("[A]ppellant, not [the appellate court], has the initial responsibility to ensure that the district court explains its reasoning for the record, and appellant neglected that responsibility when he failed to object to the district court's ruling.").[2] Instead, once the court granted the government's

---

[2] Federal Rule of Criminal Procedure 51 requires a party to "preserve a claim of error by informing the court–when the court ruling or order is made or sought–of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." The rule enables "the trial judge [to] make[ ] an informed decision, and allows the judge and opposing counsel to take whatever corrective action is needed." *United States v. Walker*, 449 F.2d 1171, 1173 n.6 (D.C. Cir. 1971). In doing so, it helps "to achieve efficiency and expedition" in the administration of justice. *Jackson v. United States*, 386 F.2d 641, 643 (D.C. Cir. 1967) (per curiam); *see also United States v. Yeh*, 278 F.3d 9, 14 (D. C. Cir. 2002) (noting that "it would be both anomalous and inefficient to place the appellant in a better position [on appeal] for having neglected to raise a relevant sentencing argument in district court") (internal quotations and alterations omitted). It also prevents the district court from being caught off guard, as it apparent-

substantial assistance motion, defense counsel focused her argument exclusively on the extent of that departure. Her reference to the appellant's role in the conspiracy and to his criminal record in the course of requesting a "time-served" sentence was wholly insufficient to invoke the specific Guideline provisions the appellant raises before us. *United States v. Foster*, 988 F.2d 206, 209–10 (D.C. Cir. 1993) (defense counsel's general reference to other sentencing claims in context of extent of court's downward departure insufficient to preserve claims); *see United States v. Bolla*, 346 F.3d 1148, 1152 (D.C. Cir. 2003), *United States v. Soto*, 132 F.3d 56, 58 (D.C. Cir. 1997). Accordingly, we review for plain error.[3]

Under plain error review, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (internal quotation and citation omitted). Leaving aside the issue of whether the district court's failure to specifically explain its rejection of the appellant's claims was, if error at all, " 'so "plain" the trial judge and prosecutor

ly was here when the government brought up the section 3B1.2 adjustment at the conclusion of the hearing.

[3] The government does not contend that the appellant's claims are unreviewable based on waiver. *Cf. Foster*, 988 F.2d at 209–10 (concluding departure and adjustment claims not raised at sentencing "not reviewable" and "waived"); *see also In re Sealed Case*, 108 F.3d 372, 374 (D.C. Cir. 1997) (suggesting strategic decision by defense counsel at sentencing unreviewable). Relying on this court's decision in *Pinnick*, 47 F.3d at 439, it does assert that his section 4A1.3 claim is unreviewable because we can presume that the district court recognized its authority to depart and declined to do so. *See* Appellee's Br. at 42–43. As we recently explained in *Draffin*, 286 F.3d at 609–10, however, we will review an unrequested departure claim for plain error even though, "as a practical matter," the result will be the same because it will be "almost impossible" to show plain error "in the departure setting."

were derelict in countenancing it, even absent the defendant's timely assistance in detecting it,'" *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994) (quoting *United States v. Frady*, 456 U.S. 162, 163 (1982)), those claims cannot succeed because he cannot "show a reasonable likelihood that the sentencing court's obvious errors affected his sentence." *Saro*, 24 F.3d at 288; *Bolla*, 346 F.3d at 1153 (noting "somewhat relaxed standard for showing prejudice under third prong of the plain error test"). For starters, once the sentencing court granted the government's substantial assistance motion, the appellant sought a "time-served" sentence—roughly 22 months—one far below the applicable adjusted 120–135 month range irrespective of any role-in-the-offense adjustment or criminal history departure. Moreover, such an adjustment or criminal history departure would have gained the appellant nothing because, with his criminal record, he did not qualify for the "safety valve provision" in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2—which allows certain first time offenders to avoid a statutory mandatory minimum sentence. *United States v. Robinson*, 158 F.3d 1291, 1293–94 (D.C. Cir. 1998) (per curiam) ("[A] court may not sentence a defendant under the 'safety valve' provision when that defendant has more than 1 criminal history point."). Thus, regardless of any vertical base-offense level adjustment or horizontal shift in the appellant's criminal history category, he nevertheless would have faced a statutory mandatory minimum sentence of 120 months.[4] *See* 21 U.S.C. § 841(b)(1)(A); U.S.S.G. § 5C1.2(a)(1). The government's substantial assistance motion provided the only way for him to avoid a ten-year sentence.[5] 18 U.S.C. § 3553(e); *see United States v. Melendez*, 518 U.S. 120, 126–27 (1996); *id.* at 133–34 (Breyer, J.) (concurring in part and dissenting in part).

---

[4] Indeed, the court specifically informed the appellant at the plea hearing that "in the absence of a [substantial assistance motion by the government] the Court will be required to sentence you to at least ten years in prison." Appellee's App. at Tab 3, 18–19.

[5] Although in his sentencing memorandum the appellant had also sought downward departures pursuant to U.S.S.G. §§ 5K2.0 and 5K2.12, he has not pursued those claims on appeal.

Furthermore, to the extent the district court may have considered and rejected a role-in-the-offense adjustment in deciding the extent of the substantial assistance departure, any error it committed inured to the appellant's benefit. We have held that the correct measure of a section 3B1.2 downward adjustment to a defendant's base offense level is the relevant conduct that establishes his base offense level. *United States v. Olibrices*, 979 F.2d 1557, 1560 (D.C. Cir. 1992); *see id.* at 1561 ("[A] defendant is not entitled to have her sentence reduced for a minimal role in relevant conduct that had no part in the calculation of the base level."); *United States v. Graham*, 317 F.3d 262, 272 (D.C. Cir. 2003) ("The determination of whether a defendant is eligible for a downward adjustment under Section 3B1.2 depends in large part on a determination of the amount of relevant conduct for which the defendant is being held responsible."). The appellant's relevant conduct is the conspiracy to which he pleaded guilty—conspiring to distribute between 50 and 150 grams of cocaine base—and not the conduct of all of the other participants in the broad conspiracy charged in the indictment. That the district court concluded the appellant was in "the middle" of the larger conspiracy could only mean that it would have also concluded he was more than a minimal or minor participant in the conspiracy for which he was being held criminally responsible. App. 181. The larger conspiracy involved the distribution of large quantities of illegal drugs, multiple firearms, stolen goods and hundreds of thousands of dollars of cash. If the appellant was an average player in that conspiracy, he could hardly be a bit player in the smaller conspiracy.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is

*Affirmed.*