# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 20, 2011    Decided November 15, 2011

No. 09-3110

UNITED STATES OF AMERICA,
APPELLEE

v.

MELVIN LAWRENCE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cr-00092-1)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Michelle Parikh Brown*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Ronald C. Machen Jr.,* U.S. Attorney, and *Roy W. McLeese III*, *John P. Mannarino*, and *Ann K.H. Simon*, Assistant U.S. Attorneys.

Before: SENTELLE, *Chief Judge*, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Upon remand by this court after affirming one of his convictions, *United States v. Lawrence*, 471 F.3d 135 (D.C. Cir. 2006), the district court granted a variance from the U.S. Sentencing Guidelines ("U.S.S.G.") range for career offenders and re-sentenced Melvin Lawrence to 250 months imprisonment (and five years supervisory release) for unlawfully distributing more than 5 grams of cocaine base. Lawrence challenges his re-sentencing on four grounds. We conclude that none has merit.

First, although Lawrence correctly points out that the amount of cocaine base of which he stands convicted was 21.1 grams, not the 29.6 grams of cocaine base stated in the Presentence Report ("PSR") and adopted by the district court in re-sentencing him,[1] both amounts fell within the same quantity range under U.S.S.G. § 2D1.1(c)(7) and carried a maximum sentence of 40 years, *see* 21 U.S.C. § 841(b)(1)(B)(iii) (2009), when he was re-sentenced on October 5, 2009. Thus, his Guidelines offense level would have been 34 regardless.

Second, Lawrence contends that the district court likely would have imposed a lower sentence but for its refusal to continue his re-sentencing and to consider the effect of pending legislation to eliminate the disparity between crack and powder cocaine on his career offender sentencing range. Pending legislation is far too removed for this court to compel district courts to consider at sentencing, and that is especially well illustrated here where the legislation was never enacted. So far

---

[1] Re-sentencing was scheduled before a district court judge who did not preside at Lawrence's trial for crack cocaine distribution in the amount of 21.1 grams on April 30, 2003. Sent'g. Tr., Sept. 3, 2009, at 15–16.

as Lawrence now claims that his re-sentencing reflected a misunderstanding by the district court of the effect of the pending legislation on career offender status, not only is that contention infected with the same remoteness and uncertainty as the other arguments surrounding the pending legislation, but it was never raised below. Defense counsel suggested only that the pending legislation, if enacted, might make a "slight difference" on the mandatory minimums, conceded any effect was "not clear," and argued Lawrence should not be treated as a career offender at all, neither referring to the link between the career offender sentencing and the statutory maximum nor objecting to the district court's statement that the pending legislation did not address the career offender provisions. The district court granted Lawrence's request for a variance from the guideline career offender sentencing range in view of the district court's policy disagreement with the 100:1 crack-powder disparity. Lawrence, therefore, can show no error, much less plain error.

Contrary to Lawrence's third challenge, the district court did not plainly err, in violation of his Fifth Amendment right against self incrimination, by referencing at re-sentencing his failure to express remorse and accept responsibility. The reference was limited to evaluating the credibility of Lawrence's request for leniency because he had changed while incarcerated. The district court never suggested such failure would be punished by a higher sentence. Indeed, the district court pointed to Lawrence's parole violations as support for its conclusion about his lack of remorse or acceptance of responsibility throughout his adult life. In the absence of precedent sustaining his Fifth Amendment claim, the error, if any, was not plain.

Finally, Lawrence's challenge to the reasonableness of his below-Guidelines reentencing fails to demonstrate the district court abused its discretion in applying the career offender

guideline provision. Even though his two prior convictions were old and involved the distribution of small amounts of drugs, the district court reasonably explained that drug distribution was a serious offense and Lawrence had a long history of disobeying the law.

**I.**

On direct appeal, this court affirmed Lawrence's conviction at his first trial of selling 21.1 grams of cocaine base on April 30, 2002, reversed his convictions at a second trial of drugs and firearms for lack of sufficient evidence of constructive possession, and remanded the case for re-sentencing. *Lawrence*, 471 F.3d at 143. Re-sentencing was scheduled for August 27, 2009. The PSR stated that: the drug offense involved 29.6 grams of cocaine; Lawrence was a "career offender" under U.S.S.G. § 4B1.1 based on two 1991 drug convictions and his offense level was 34 (increased from 26) and that his criminal history category was VI (increased from IV), resulting in a Guidelines sentencing range of 262–327 months' imprisonment.

Prior to his scheduled re-sentencing date of August 27, 2009, Lawrence filed a motion to continue the sentencing hearing "until October 2009" because "[o]n July 29, 2009, the 'Crack Bill was voted out of the House Judiciary Committee and will amend the current law dramatically in a way which could effect the defendant herein." Mot. for a Downward Departure or Variance ("Mot. D/V") at 1.[2] As described in his motion, H.R.

---

[2] The bill, H.R. 3245, to amend the Controlled Substances Act and the Controlled Substances Import and Export Act regarding penalties for cocaine offenses, and for other purposes, was introduced on July 16, 2009, 111th Cong., 1st Sess. (2009), and ordered reported by voice vote of the Judiciary Committee on July 29, 2009, but not enacted.

3245 proposed to "make the mandatory minimums for powder apply also to crack and . . . eliminate the separate mandatory minimums for crack." *Id.* The government opposed a continuance on the grounds that it was impossible to speculate when the bill might become law, if at all, and that Lawrence's "sentence was calculated based upon his status as a career offender, not with respect to any sentencing ratios regarding crack and powder cocaine or even with respect to the mandatory minimum sentences for such offenses." Gov't Opp'n. to Mot. to Cont. at 2. The district court agreed about the uncertainty of enactment and denied Lawrence's motion but rescheduled the re-sentencing because of a scheduling conflict.

When Lawrence appeared for re-sentencing on September 3, 2009, defense counsel argued that Lawrence's sentence should take account of the criticism of the crack/powder disparity. The district court, observing that the Sentencing Commission had lowered the ratio, "but it is not one to one," Sent'g Tr., Sept. 3, 2009, at 14, responded:

> Part of the reason that I went forward with the sentencing is my understanding from looking at the legislation, and frankly speaking to Judge Walton, who has been the one spearheading to some degree the [move to] try[] to get rid of the disparity, has indicated that the pending legislation certainly moves towards making the parity between crack and powder.

> There is in there [the provision] about the mandatory minimums, but it doesn't touch the career offender in terms of . . . across the board, whether it's crack cocaine or whatever. . . . [A]s I understand it, that's not what has been moving forward. It may eventually, but it hasn't at this point. So, it's the career offender . . . that puts [Lawrence] in the additional

categories, not really necessarily the disparity between the crack and the powder.

Sent'g Tr., Sept. 3, 2009, at 14–15. Defense counsel then acknowledged that the pending legislation, H.R. 3245, "might [make] a slight difference in terms of [Lawrence] qualifying where the mandatory minimum [sentencing guideline range] is calculated based on the maximum penalty. It might be slightly less based on powder, but . . . it's not clear to me that it would be. So . . . I do agree with the Court that [the pending legislation] would not . . . necessarily make the difference." *Id.* at 15. Defense counsel accordingly urged the district court, particularly in view of the reversals on appeal, to exercise its discretion to "go outside of the guidelines" in re-sentencing Lawrence. *Id.*[3] Re-sentencing was again continued because of confusion about a parole violation stated in the PSR that Lawrence challenged.

At the rescheduled re-sentencing on October 5, 2009, the district court found, adopting unchallenged findings in the PSR, that: (1) Lawrence was found guilty of unlawful distribution of five grams or more of cocaine base, for which the mandatory minimum was five years' imprisonment and the statutory maximum was forty years' imprisonment; (2) the base offense level of 26 was raised to 34 because he was a career offender; (3) his criminal history category would be IV, based on his two

---

[3] In a written motion for a downward departure or variance, defense counsel stated that the PSR calculation indicated his Guidelines range of 30–37 months was increased, due to the career offender enhancement, to 262–325 months. Mot. D/V at 3–4. Counsel stated that such an increase, particularly in view of "the 1;1 ratio[] of [c]ocaine to [c]ocaine [b]ase," "cannot be reasonable given the extremely small quantities involved in the predicate offenses and their remoteness in time." *Id*. at 4.

prior felonies (distribution of cocaine and of PCP) and having committed the present offense while on parole for earlier offenses, but was raised to category VI by his career offender status; and (4) the resulting Guidelines sentencing range was 262 to 327 months. Defense counsel argued for a variance in order to nullify the crack-powder disparity and to relieve Lawrence of the consequences of being classified as a career offender, suggesting that 92 to 115 months, the Guidelines range without the criminal history category, would meet the statutory goals of 18 U.S.C. § 3553. Counsel noted that Lawrence was guilty of distributing "a total of less than 30 grams, as I calculate it, of crack cocaine"; that while incarcerated he had completed "a number of educational programs"; and that his violation of parole in 2000 was not by being arrested for a new offense but by failing to report, failing to take a mandated drug test, and testing positive for marijuana. During allocution, Lawrence asked for leniency: he noted his elderly mother's need for help in caring for his 11-year old son, claimed that although he had "gotten into some altercations" while serving his sentence in the present case, he wanted to be a "productive citizen" and "do the right things," and stated that to that end he read the Bible, attended church, school, and college.

Before re-sentencing Lawrence the district court reviewed his history of law violations, beginning at age 12 and continuing steadily while he was an adult.[4] The district court rejected

---

[4] The undisputed findings in the PSR relevant to the re-sentencing stated that, between the ages of 12 and 17, Lawrence had been adjudicated a juvenile delinquent for second degree burglary, assault with a deadly weapon, burglary, multiple simple assaults, and PCP distribution, with commitments to juvenile facilities on three occasions. As an adult, Lawrence had been convicted, beginning at age 18, of attempted distribution of marijuana; his Youth Act probation was revoked and he was later paroled. Eight months after

defense counsel's argument that Lawrence's criminal history category substantially over-represented the seriousness of his criminal history, noting there were no long intervening periods when he was not involved in criminal behavior, locked up, or not complying with parole. The district court observed that "selling drugs is a serious offense[,] [n]o matter what amount of drugs[;] it tears the fabric of our community[;] it can result in violence[;] [t]his is not a victimless crime," and that Lawrence "know[s] from [his] own experience how destructive [selling drugs in the community] actually is." Sent'g Tr., Oct. 5, 2009, at 20. The district court concluded that his promise to "turn over a new leaf" – "always easier to indicate . . . when you're locked up" – was undercut "to some extent" by his failure to express

_____

his parole, he was arrested and later convicted for distribution of cocaine, which resulted in revocation of his parole and a sentence of 6 to 18 years imprisonment. Two months before sentencing for the cocaine conviction, at age 21, he was arrested for distribution of PCP; upon conviction he was sentenced to 8 to 24 years imprisonment, the sentence to run concurrently with his cocaine sentence. In 1996, Lawrence was paroled in each case. In 2000, he violated conditions of both paroles. He was arrested for the cocaine distribution count for which he was to be re-sentenced while on parole for his two earlier drug convictions. He had eight arrests that did not result in convictions, and one arrest where his conviction was reversed on appeal. He was expelled from school in the tenth grade, re-enrolled, dropped out, and secured a General Education Degree while incarcerated. He was unemployed at the time of the offense for which he was to be re-sentenced, and he had no reported income from 2000 through 2006. He had "experiment[ed]" with PCP from ages 9 to 20; with marijuana from ages 13 to 20; and intermittently from 2000 until his arrest in this case with crack cocaine from ages 16 to 20. He had abused alcohol from age 26 until his arrest here. The PSR also found that on April 30, 2002, an undercover police officer purchased 29.6 grams of crack cocaine from Lawrence for $1,100; Lawrence challenges the drug quantity for the first time in the instant appeal; *see* Appellant's Br. 10–15.

remorse or accept responsibility for his conduct in this case and by his earlier, repeated violations of the conditions of his paroles. Sent'g Tr., Oct. 5, 2009, at 20–21. On the other hand, the district court observed that his pursuit of educational opportunities while in prison "show[ed] some maturing." *Id.* at 22. Then, observing again that its understanding was that the pending legislation "doesn't address the career offender issue" and the crack/powder disparity "doesn't effect" career offender status, the district concluded that "somewhat of a variance" was warranted, "although not as substantial as [defense] counsel has requested," in order to ameliorate "the continuing policy regarding higher penalties for crack cocaine versus powder," with which the district court "disagree[d]." *Id.* at 24. The district court re-sentenced Lawrence to 250 months imprisonment, which was twelve months below the bottom of the career offender guideline range (with five years supervised release).

## II.

Lawrence contends that the district court clearly erred in adopting the PSR's finding that he stood convicted after his appeal of distributing 29.6 grams of crack cocaine, that it did likewise in concluding that the pending legislation would not lower his career offender sentencing guideline range, and that the combination of these errors requires a second re-sentencing. He maintains that but for these errors the district court likely would have continued re-sentencing or imposed a lower sentence.

Our review of sentencing challenges that have been properly preserved is for abuse of discretion under a two-step analysis: first to "ensure that the district court committed no significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts"; and second, to ensure,

"[a]ssuming that the district court's sentencing decision is procedurally sound," the sentence is substantively reasonable." *Gall v. United States*, 552 U.S. 38, 51 (2007). The more demanding plain error standard of review applies where timely objections to findings in the PSR are not made, *cf. United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994), or where a defendant fails to raise a claim at his sentencing hearing or fails to object to a district court's ruling, *see In re Sealed Case*, 349 F.3d 685, 690–91 (D.C. Cir. 2003) (citations omitted). Under plain error, there must be error, that is plain, and that affects a defendant's substantial rights; "[i]f all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if [] the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *In re Sealed Case*, 349 F.3d at 691. The court observed in *Saro* that "the plain-error doctrine was well-entrenched as a background legal principle" when Congress enacted 18 U.S.C. § 3742(f)(1), which provides courts of appeals "shall" remand cases for re-sentencing if the sentence "was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines," and concluded that it would be "fanciful to suppose that Congress intended § 3742(f)(1) to override that doctrine." 24 F.3d at 286. The court noted the other circuits applied plain error to sentencing, *see id.* They, like we, *see, e.g., United States v. Anderson*, 632 F.3d 1264, 1269 (D.C. Cir. 2011), have continued to do so.[5] Consistent with *Saro*'s observation and absent Supreme Court or Congressional guidance to the

---

[5] *See, e.g., United States v. Durham*, 645 F.3d 883, 899 (7th Cir. 2011); *United States v. Wallace*, 461 F.3d 15, 32–33 (1st Cir. 2006).

contrary, we apply plain error to objections not raised at sentencing.[6]

**A.**

Lawrence correctly points out that the re-sentencing involved only his conviction for distributing 21.1 grams of crack cocaine. *See Lawrence*, 471 F.3d at 137, 138. In re-sentencing him, the district court relied on the PSR, which stated he had been convicted of distributing 29.6 grams. Neither the prosecutor nor defense counsel alerted the district court to the error in the PSR. Although defense counsel failed to object at sentencing, Lawrence is not now barred from complaining because, the government suggests, the error was "invited." Invited error occurs when defense counsel induces the error. *See, e.g.*, *United States v. Ginyard*, 215 F.3d 83, 88 (D.C. Cir. 2000); *United States v. Harrison*, 103 F.3d 986, 992 (D.C. Cir. 1997). Here, the district court's finding on drug quantity preceded defense counsel's reference to "less than 30 grams," and although the context indicates defense counsel may have believed 29.6 grams was accurate, the reference to "less than 30 grams" does not exclude the correct amount – both 21.1 and 29.6 are less than 30. At most, Lawrence "acquiesced in what he now claims is error, but he did not invite it." *In re Sealed Case*, 108 F.3d 372, 374 (D.C. Cir. 1997).

---

[6] In urging review for clear error, Lawrence overlooks the exceptions noted in the dictum on which he relies in *In re Sealed Case*, 552 F.3d 841, 849 (D.C. Cir. 2009) (Edwards, J., joined by Silberman, J., concurring). The two judges who suggested in admitted dictum that clear error might apply to some sentencing appeals regardless of whether there was an objection at sentencing acknowledged both that timely objections to the findings in a PSR must be made to preserve an objection for appeal and that plain error review applies where timely objections are not made and new claims are raised for the first time on appeal. *See id.*

12

Although the error regarding the quantity of drugs was not "obvious," as that word is defined in *Saro*, 24 F.3d at 291, we need not reach this issue. Lawrence cannot show plain error because, at least standing alone, this error was not prejudicial. As in *Williams*, 358 F.3d at 967, "[t]here is simply nothing . . . to suggest any likelihood that the District Court would have assigned [the defendant] a different base offense level had it" corrected the mistake regarding quantity. Under U.S.S.G. § 2D1.1(c)(7), the base offense level was 26 for "[a]t least 20 G but less than 35 G of Cocaine Base." Lawrence correctly concedes that an offense involving 29.6 grams of cocaine base as well as an offense involving 21.1 grams of cocaine base was subject to a 5 to 40 years sentencing range prior to enactment of the Fair Sentencing Act of 2010 on August 3, 2010.[7] *See* Appellant's Br. at 13–14. As such, a correction to the PSR with respect to the amount of cocaine base would still have resulted in a career offender offense level of 34 under U.S.S.G. § 4B1.1(b).

**B.**

The district court denied Lawrence's motion to continue the initial August 27, 2009 re-sentencing based on the pending legislation because it was impossible to know when or if that legislation would be enacted and become law. Prompted by defense counsel's general statements about shifts in thinking about the crack/cocaine guidelines, the district court made several observations about the pending legislation, the gist of which was that Lawrence's re-sentencing was driven by the career offender provision rather than the crack-powder cocaine disparity. *See* Sent'g Tr., Sept. 3, 2009, at 14–15, quoted *supra*. At the October 5th re-sentencing, the district court repeated that "the pending legislation doesn't address the career offender issue." *Id.*, Oct. 5, 2009, at 24.

---

[7] Pub. L. No. 111-220, 129 Stat. 2372 (2010).

**1.** As a threshold matter, Lawrence appears to base his contention that he is entitled to be re-sentenced on the district court's denial of his motion to continue the August 27, 2009 re-sentencing. To that extent, his contention fails because he cannot show an abuse of discretion by the district court, *see United States v. Celis*, 608 F.3d 818, 839 (D.C. Cir. 2010), much less prejudice, *see id.* Pending legislation is generally too removed for this court to compel district courts to consider at sentencing, and that is especially well illustrated here where the legislation was never enacted. The government pointed out, in opposing Lawrence's motion to continue re-sentencing, that there was "no indication of whether or when such a bill would be considered by the full House of Representatives, or the Senate, let alone whether or when such bill would be passed by either house of Congress or signed into law by the President." Gov't Opp'n at 1. To the extent Lawrence connects the denial of a continuance and the district court's asserted misunderstanding of the pending legislation in maintaining that the district court would have either continued re-sentencing or imposed a lower sentence, whether the motion to continue was granted is not relevant to the relief he seeks. Lawrence is seeking a new sentence because, in his view, the district court misunderstood the pending legislation.

**2.** So far as Lawrence claims that his re-sentencing reflected a misunderstanding by the district court of the effect of the pending legislation on career offender sentencing, not only is that claim infected with the same remoteness and uncertainty as the other contentions surrounding the pending legislation, but it was never raised below. Lawrence's counsel argued in the district court that if enacted and made retroactive, the pending legislation "might" make "a slight difference" in the applicable mandatory minimum. But counsel did not suggest that the pending legislation would have an effect on his career offender status, nor take exception to the district court's stated

understanding that it would have no such effect. As such, plain error review applies.

To the extent Lawrence maintains that the district court was considering what amounted to a policy argument based on the crack-powder cocaine disparity that would be modified by the pending legislation, Lawrence's focus on the enacted legislation is irrelevant because that was not the subject of the district court's understanding.[8] Furthermore, Lawrence incorrectly frames the issue as whether the pending or enacted legislation "would . . . [have] affect[ed] the career offender guideline range." Appellant's Br. 13. This was not the import of the district court's statements. The district court did not state that the career offender guideline provision and Lawrence's re-sentencing would be wholly unaffected by the pending legislation if enacted; instead, it stated that the pending legislation was not directed toward fixing the effects of the crack-powder cocaine disparity in the context of the career offender guideline provision. It was Lawrence's two prior felonies that caused the increase in his guidelines sentencing

[8] S. 1789, to restore fairness to Federal cocaine sentencing, was introduced on October 15, 2009, 111th Cong., 1st Sess., six and one-half weeks after Lawrence sought a continuance of his re-sentencing and ten days after he was re-sentenced. The bill, enacted on August 3, 2010 as the Fair Sentencing Act of 2010, did not become law until nine and one-half months after he sought a continuance and eight months after he was re-sentenced. The 2010 Act increased the threshold for the 40-year statutory maximum from 5 grams to 28 grams of cocaine base (i.e. crack), *see* 21 U.S.C. §§ 841(b)(1)(B)(iii) (2010), with a quantity less than 28 grams subject to a 20-year statutory maximum, *id.* § 841(b)(1)(C). The result was a 18:1 disparity for crack to powder cocaine, not the 1:1 ratio proposed in H.R. 3245, which legislation was pending when Lawrence was re-sentenced.

range and the pending legislation did not address his career offender status. The question, rather, is whether the district court's statement regarding the pending legislation was, as Lawrence now claims, incorrect and if so, whether Lawrence can show plain error.

Application of the career offender guideline provision, U.S.S.G. § 4B1.1, requires taking the greater offense level between the offense level calculated independent of § 4B1.1, and the career offender offense level, which is based on the statutory maximum. *See United States v. Berry*, 618 F.3d 13, 15 (D.C. Cir. 2010). As the district court found, the Guidelines offense level was 26, *see* U.S.S.G. § 2D1.1(c)(7), and the statutory maximum under the law at the time of re-sentencing was 40 years, *see* 21 U.S.C. § 841(b)(1)(B) (2009), resulting in a career offender offense level of 34. Had the pending legislation been enacted, at least prior to Lawrence's re-sentencing,[9] it would have repealed 21 U.S.C. § 841(b)(1)(B)(iii) (2009), which created the sentencing disparity between crack and other cocaine substances, *see* 21 U.S.C. § 841(b)(1)(B)(ii), treating crack cocaine equally with all other cocaine substances. As such, a crime involving less than 500 grams of cocaine — whether crack or powder — would be subject to a 20-year statutory maximum, as provided in 21 U.S.C. § 841(b)(1)(C). A 20-year statutory maximum, in turn, translates to a career offender offense level of 32. According to Lawrence, under the pending legislation his career offender sentencing guideline

---

[9] There is a split in the circuits on the retroactivity of the Fair Sentencing Act of 2010, *supra* notes 7 & 8. *Compare United States v. Dixon*, 648 F.3d 195, 203 (3d Cir. 2011); *United States v. Rojas*, 645 F.3d 1234, 1239–40 (11th Cir. 2011); *United States v. Douglas*, 644 F.3d 39 (1st Cir. 2011) *with United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011); *United States v. Spires*, 628 F.3d 1049, 1055 (8th Cir. 2011). We have no occasion to address this issue.

range would have been 210–262 months rather than 262–327 months.  *See* Appellant's Br. 9.

Put simply, if enacted the pending legislation would have eliminated any disparity in statutory maximum sentences for crack and powder cocaine, and in doing so also eliminated any disparity in the application of the career offender sentencing guideline provision.  This was not defense counsel's argument, however.  In requesting a sentence below the career offender guideline range, counsel focused on the statutory minimums and argued that Lawrence's designation as a career offender, and the resulting criminal history category VI, either "substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."  Mot. D/V at 1.  Rather than urge the district court to depart or vary Lawrence's sentence from the guideline range for career offenders because the pending legislation addressed the disparity reflected in the career offender guideline provision, counsel conceded agreement at the October 5, 2009 re-sentencing hearing with the district court's statement that the pending legislation did not address the disparity for purposes of career offender status.  To the extent this exchange reflected a miscommunication — although the district court and defense counsel agreed that Lawrence's two felony convictions qualified him for career offender status and the pending legislation did not affect that, whereas defense counsel intended to communicate that the career offender sentencing range would be reduced under the pending legislation — the burden was on defense counsel to make clear to the district court that its understanding of the defense position was either inaccurate or incomplete.  *See United States v. Pinnick*, 47 F.3d 434, 439 (D.C. Cir. 1995).  Absent such a clarification, the district court could not plainly err by failing to read defense counsel's mind.

In any event, any error in the district court's understanding of the pending legislation's effect on the career offender sentencing range would not have been prejudicial, for in the plain error standard context, a defendant must demonstrate "some basis for suspecting that a reduction in his sentence is sufficiently likely to justify a remand." *See Williams*, 358 F.3d at 966 (citing *Saro*, 24 F.3d at 292). The district court acted on the basis that the statutory maximum was 40 years and the career offender provision increased Lawrence's criminal history category to VI; that the pending legislation proposed to eliminate the 100:1 disparity, with which it disagreed as a matter of policy, but there was nothing to indicate when, much less if, Congress would enact it. Congress never did. There is, then, nothing in the record to indicate, as Lawrence now contends, that the district court's variance would have been greater because its own policy disagreement with the disparity would have been more in line with the pending legislation. The district court noted at the time that the Sentencing Commission's recommended adjustment to the disparity was not 1:1.[10] Thus, to the extent that Lawrence would link the district court's denial of his motion for a continuance and its alleged misunderstanding of the pending legislation, his conclusion that had the district court realized the pending legislation would, if enacted, affect career offender sentencing, it would have continued the re-sentencing or imposed a lower sentence is pure speculation.

---

[10] At the time of Lawrence's re-sentencing, the Sentencing Commission had "concluded that increasing the five-year mandatory minimum threshold quantity to *at least* 25 grams, resulting in a drug quantity ratio of *not more than* 20 to 1, would provide a penalty structure for crack cocaine offenses that would more closely reflect the overall penalty structure established by the 1986 Act." U.S.S.C., 2007 COMMISSION REPORT TO THE CONGRESS: COCAINE & FEDERAL SENTENCING POLICY, 8 & n.26 (citing the U.S.S.C., 2002 COMMISSION REPORT at 106-07).

Additionally, whatever nuance about the effects of the pending legislation the district court might not have understood, it granted Lawrence a sentencing variance of twelve months below the bottom of the Guidelines range based on the same policy disagreement with cocaine sentencing that motivated the pending legislation. Thus, what Lawrence asks us to assume might have happened — that the district court would have granted a variance based on a policy shift that favored lowering sentences for defendants like Lawrence — already occurred. He points to nothing that suggests the district court likely would have imposed a lower sentence. Rather, the district court recognized that the variance it gave was "not as substantial as [defense] counsel [had] requested," Sent'g. Tr., Oct. 5, 2009, at 24, suggesting that the district court's sentencing policy disagreement was only a limited factor in its sentencing calculus.

Even assuming, as Lawrence contends, the district court's understanding of the pending legislation should be treated as factual finding, it was not a finding made "in support of a particular sentence." *In re Sealed Case*, 552 F.3d at 849 (dictum); *see Gall*, 552 U.S. at 51. The district court's first challenged "understanding" was made in denying his motion for a continuance. Sent'g Tr., Sept. 3, 2009, at 15. The second challenged "finding" adopting the PSR drug amount has no apparent role in the district court's selection of a "particular sentence" because the difference between 29.6 grams and 21.1 grams was irrelevant. *See supra* Part II.A. Similarly, Lawrence cannot establish error with regard to the district court's "understanding" that the pending legislation would not "touch the career offender" rules that put him "in the additional categories" that largely determined his guideline range. Sent'g Tr., Sept. 3, 2009, at 14–15. To the extent the district court's "understanding" of the pending legislation's effect on the career offender sentencing guideline range may be a factual finding,

the legislation was never enacted and the district court did not err by *sua sponte* failing to recognize otherwise. The district court, the government suggests, was not in a position to "recognize" the "likely impact" of the pending legislation in denying a continuance or re-sentencing Lawrence. Appellee's Br. 17–18. Lawrence has not shown that at re-sentencing a "'mistake has been committed,'" *United States v. Brockenborrugh*, 575 F.3d 726, 738 (D.C. Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)), much less plain error, as would entitle him to a second re-sentencing.

### III.

Lawrence also contends that the district court plainly violated his Fifth Amendment right against self-incrimination by considering at re-sentencing his failure to express remorse or take responsibility for his conduct in the present case. During allocution Lawrence stated that he had "been trying to do the right things" since he had been incarcerated on the current drug offense. Sent'g Tr., Oct. 5, 2009, at 11–12. In response, the district court acknowledged his promise to "turn over a new leaf" but rejected his plea for leniency because it did not see "any signs of remorse or acceptance of responsibility" for his conduct. *Id*. at 20. Observing that "[i]t is always easier to indicate you're going to turn over a new leaf when you're locked up for getting out," the district court explained that it did not "get the sense there's an appreciation, frankly of the conduct you've engaged in." *Id.* at 21. Noting that Lawrence's criminal history and parole violations undercut his promise, *see id.* at 21–22, the district court added:

> [Y]ou don't seem to have — as I said, the appeal is done, so that's finished. I can understand your not wanting to potentially say anything while . . . your

> appeal is pending, but there doesn't seem to be any sign of remorse, acceptance of responsibility of anything in terms of what you've done.

*Id.* at 23. Because Lawrence did not object to the district court's statements at the time of re-sentencing, review of his Fifth Amendment challenge is for plain error. *See Anderson*, 632 F.3d at 1269.

Contrary to the government's suggestion, Lawrence has not waived his Fifth Amendment privilege by failing to invoke it at sentencing. He invoked his privilege at trial, *see Lawrence*, 471 F.3d at 138, and unlike in *Roberts v. United States*, 445 U.S. 552, 559 (1980), on which the government relies, the district court here was aware that self-incrimination might be an issue, at least prior to the completion of his direct appeal of his conviction. *See* Sent'g Tr., Oct. 5, 2009, at 23. Under *Roberts*, the non-self-executing nature of the Fifth Amendment privilege is qualified, for the Court stated that timely invocation is required "[a]t least where the Government had no substantial reason to believe that the requested disclosures are likely to be incriminating." *Id.*

Lawrence fails, however, to demonstrate plain error. The government cites *Mitchell v. United States*, 526 U.S. 314, 321 (1999), which held that a defendant does not waive the Fifth Amendment privilege at sentencing by pleading guilty. That case concerned whether the government can enlist a defendant in proving facts relevant to the crime at the sentencing phase — the drug amount attributable to the defendant in a conspiracy. The Court left unaddressed "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility." *Id.* at 330. If the district court's response to Lawrence's request for leniency was error by reason of

references to remorse and acceptance of responsibility, the error was not plain under *Mitchell*.

The same is true under this court's precedents. Like other circuits, this court has held that a convicted yet-to-be-sentenced defendant "retains a legitimate protectable Fifth Amendment interest in not testifying as to incriminating matters that could yet have an impact on his sentence." *United States v. Lugg*, 892 F.2d 101, 103 (D.C. Cir. 1989) (citations omitted). The court has held that a district court may not pressure a defendant into expressing remorse such that the failure to express remorse is met with punishment. *See United States v. Hopkins*, 464 F.2d 816, 822 (D.C. Cir. 1972); *Scott v. United States*, 419 F.2d 264, 267–68 (D.C. Cir. 1969). It is unclear, however, whether these principles extend to a district court's consideration of a defendant's lack of remorse with respect to mitigation or leniency under either the Guidelines or 18 U.S.C. § 3553(a). Other circuits have held that lack of remorse is a proper consideration at sentencing. *See, e.g., United States v. Cruzado-Laureano*, 527 F.3d 231, 237 (1st Cir. 2008) (citations omitted). In *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011), the Eleventh Circuit held that even if the district court erred in asking whether the defendant felt remorse, no substantial right was affected because of the low-end Guideline sentence that was imposed. Outside of the Fifth Amendment context, this court rejected a challenge to the reasonableness of a sentence in *United States v. Reed*, 522 F.3d 354 (D.C. Cir. 2008), where the district court's treatment of a leniency plea included "express[ing] frustration with [the defendant's] 'total lack of remorse,'" *id.* at 363 (citation omitted). In the context of a Guidelines reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, this court has yet to resolve any lurking Fifth Amendment issue. *See United States v. Saani*, 650 F.3d 761, 769–70 (D.C. Cir. 2011); *United States v. Taylor*, 937 F.2d 676, 680–81 (D.C. Cir. 1991).

Given the dearth of precedent from this court on the relevant issue and the absence of statutory or constitutional command resolving the issue, the district court's reference, if error, was not "plain." *See In re Sealed Case*, 573 F.3d 844, 851–52 (D.C. Cir. 2009). Notably, Lawrence's situation is distinguishable from those in which a Fifth Amendment claim would be on stronger ground, such as where, for example, the district court *sua sponte* remarked that it was imposing a particular sentence because Lawrence failed to express remorse, or imposed a higher sentence for that reason. *See United States v. Johnson*, 903 F.2d 1084, 1089–90 (7th Cir. 1990); *cf. United States v. Jones*, 997 F.2d 1475, 1478–79 (D.C. Cir. 1993) (en banc). By allocuting for leniency on the basis of having changed since his incarceration, however, Lawrence placed that question in issue and the district court properly offered an explanation for its rejection of his plea for leniency. *Cf. Gall*, 552 U.S. at 51. In *United States v. Dozier*, 162 F.3d 120, 128 (D.C. Cir. 1998), the court observed, in concluding no plain error occurred when the district court failed to explain its denial of a two-level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility, that "[w]hile the district court lacks the power to force a defendant to express remorse he does not feel, it is not required to reward a remorseless defendant with a decrease in his offense level." Here, moreover, the district court indicated that another factor, namely, Lawrence's parole violations, affected its determination of an appropriate sentence based on his lack of acceptance of responsibility. *See* Sent'g Tr., Oct. 5, 2009, at 21.

## IV.

Finally, Lawrence challenges the substantive reasonableness of his re-sentencing. Although acknowledging that he qualified by reason of his two prior felony convictions for sentencing as a career offender, *see* U.S.S.G. § 4B1.1(a),

Lawrence contends that his prior convictions — 1991 sales to undercover officers of .257 grams of cocaine base worth $50 and PCP-laced marijuana worth $25 — involved too small a quantity of drugs and were too remote in time to justify sentencing as a career offender. Although initially seeking either a downward departure or a variance, defense counsel clarified on October 5, 2009, that Lawrence was seeking a variance. *See* Sent'g Tr., Oct. 5, 2009, at 9–10. The district court imposed a sentence based on a variance 12 months below the career offender guideline sentencing range.

Our standard of review is highly deferential, particularly given the rebuttable presumption of reasonableness that attaches to sentences within the Guidelines range. *United States v. Gardellini*, 545 F.3d 1089, 1092–93 (D.C. Cir. 2008). "The court reviews the substantive reasonableness of a sentence under the abuse of discretion standard even when no objection was raised in the district court," *United States v. Wilson*, 605 F.3d 985, 1034 (D.C. Cir. 2010).

Doubtless, sentences below the career offender range have been determined upon appeal to be reasonable. Lawrence relies on cases affirming sentences below career offender ranges, where the issue was whether departure from the career offender guideline was substantively reasonable. On reply, Lawrence cites *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1054–55 (9th Cir. 2009), where the court concluded that a 16-level enhancement for unlawfully entering or remaining in the United States after committing a crime of violence was unreasonable because the conviction was over 20 years old and there was no subsequent criminal activity. *Amezcua-Vasquez* is readily distinguishable, to the extent it may be persuasive.[11]

_____

[11] The Ninth Circuit "attach[ed] no presumption of reasonableness" to Amezcua-Vasquez's correctly-calculated sentence,

The district court acknowledged its discretion to depart downward under U.S.S.G. § 4A1.3 or to grant a discretionary variance under 18 U.S.C. § 3553(a). *See* Sent'g Tr., Oct. 5, 2009, at 13–24. It rejected Lawrence's argument that his criminal history was overstated, explaining that although his felony convictions were over a decade old at the time of his initial sentencing in 2005, distributing drugs is a serious offense no matter the amount of drugs involved and that his criminal activity continued throughout the 1990s, including incarceration and he continued to have behavior and alcohol abuse problems. *See supra* note 4. Lawrence offers no reply to this criminal history other than to maintain that the district court's reliance on the 1991 felony convictions was unreasonable because of their age and the small amounts of illegal drugs. The district court acted within its discretion in evaluating the seriousness of his prior drug offenses, *cf. United States v. Wilson*, 605 F.3d 985, 1035–36 (D.C. Cir. 2010), and Lawrence fails to rebut the presumption of reasonableness.

Accordingly, we affirm the amended judgment filed October 12, 2009 reflecting the re-sentencing of October 5, 2009.

---

*Amezcua-Vasquez*, 567 F.3d at 1055, whereas this court would have, *see United States v. Law*, 528 F.3d 888, 902 (D.C. Cir. 2008), making reversal more unlikely, *see Gardellini*, 545 F.3d at 1093, and the prior conviction in *Amezcua-Vasquez* was too old to be counted under the criminal history score, U.S.S.G. § 4A1.2, unlike here.