UNITED STATES of America, Appellee,

v.

Thomas SANCHEZ, a/k/a Aquilino Batista, a/k/a Steve Sanchez, a/k/a Thomas Sanchez Batista, Appellant.

No. 94–3086.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1995.

Decided July 19, 1996.

Roberto Iraola, Washington, DC, with whom Barry Coburn (appointed by the court) and Benjamin B. Klubes, were on the briefs, argued the cause for appellant.

Kristan Peters–Hamlin, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R.

Fisher, Thomas C. Black, Thomas J. Tourish, Jr., and S. Hollis Fleischer, Assistant United States Attorneys, Washington, DC, were on the brief, argued the cause for appellee.

Before EDWARDS, Chief Judge, and BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Appellant Thomas Sanchez pleaded guilty to conspiracy to distribute cocaine base and was sentenced to sixty months' imprisonment. He did not appeal. After serving eight months, however, Sanchez filed a *pro se* motion for habeas corpus relief, which the district court denied. In asking us to overturn that ruling, Sanchez claims, among other things, that because the district court failed to advise him of his right to appeal his sentence, he was denied that right. He also asserts that the court erred in rejecting his claim that the Government had entrapped him into selling crack cocaine instead of powder cocaine in order to impose a harsher sentence on him.

We hold that the district court's failure to advise Sanchez of his right to appeal was error *per se*. Accordingly, we vacate appellant's sentence and remand for resentencing so that Sanchez may perfect a direct appeal of the new sentence. We conclude, however, that the court's ruling on the entrapment claim was correct.

## I. BACKGROUND

On May 25, 1993, Thomas Sanchez appeared in district court with retained counsel and entered a guilty plea to a charge of conspiracy to distribute cocaine base ("crack") in violation of 18 U.S.C. § 371. After determining, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, that Sanchez understood his plea and its implications, the judge heard the Government's proffer of the evidence it would have introduced at trial.

The Government asserted that on January 26, 1993, a confidential informant working with the Drug Enforcement Administration ("DEA") contacted Sanchez and told him he was interested in buying two ounces of crack cocaine. Sanchez replied that he could obtain the crack and would sell him two ounces for $1,700. On January 27, 1993, Sanchez met the DEA informant in an apartment house parking lot and advised him that the crack cocaine was still "cooking" in an upstairs apartment. Ten minutes later, Sanchez told the informant the crack still was not ready. After 20 to 30 minutes, Sanchez emerged from the apartment building and handed the informant approximately 55.5 grams of crack cocaine in exchange for $1,700.

After Sanchez affirmed that these assertions were true, the judge accepted his guilty plea. Sanchez signed a plea agreement and a waiver of jury trial. At a sentencing hearing held on August 3, 1993, the district court sentenced Sanchez to sixty months' imprisonment (the maximum sentence allowed by statute) followed by three years of supervised release. There is no evidence in the transcript of the sentencing hearing that Sanchez was advised of his right to appeal his sentence. He did not file a direct appeal.

On March 21, 1994, Sanchez filed a *pro se* "Motion to Vacate, Set Aside, or Correct Sentence" pursuant to 28 U.S.C. § 2255, asserting various grounds for relief. Sanchez identified what he believed to be nine errors in his conviction, sentencing hearing, and sentence. Of those nine, two are relevant here. The first is the claim that the Government entrapped Sanchez into selling crack instead of powder cocaine so that it could punish him for the more severe offense and, therefore, the court should have sentenced him for the lesser offense. The second claim is that Sanchez was denied his right to appeal the sentence because his attorney refused his request to file one.

With the exception of one technical error that it corrected, the district court found Sanchez's "objections to be without merit or without any effect on his sentence." *United States v. Sanchez*, Crim. No. 93–0086 (Order, D.D.C. May 18, 1994) ("Order") at 1. In reaching that conclusion, the court discussed a number of Sanchez's arguments but failed

to mention his claim that he had been denied his right of appeal.

After Sanchez filed a *pro se* appeal from the denial of his section 2255 motion, he was provided court-appointed counsel who submitted a new brief on his behalf. This brief raised the following claims, the second of which had not been mentioned in Sanchez's *pro se* section 2255 motion: (1) ineffective assistance of trial counsel by virtue of his failure to appeal the sentence, (2) the denial of his right of appeal as a result of the trial court's failure to advise him of that right, and (3) the court's application of an erroneous standard in evaluating the sentencing entrapment claim that Sanchez presented in his section 2255 motion. Because a finding in Sanchez's favor on the second claim will moot the first, we begin with an examination of a trial court's duty to advise a convicted defendant of his right of appeal.

## II. DISCUSSION

### A. Sanchez's Right to Appeal His Sentence

■ At the time of the sentencing hearing, the district court was required by Rule 32(a)(2) of the Federal Rules of Criminal Procedure to advise Sanchez of his right to appeal his sentence: "after sentence is imposed following a plea of guilty ... the [district] court shall advise the defendant of any right to appeal the sentence." Fed. R.Crim.P. 32(a)(2) (1993). Although this directive now appears, in revised form, in Rule 32(c)(5), its substance remains unchanged. *See* Fed.R.Crim.P. 32(c)(5) (1995); Fed. R.Crim.P. 32(c)(5) advisory committee's note. Because Rule 32(a)(2) was in effect at the relevant time, we shall refer to it rather than to its successor.

It is plain from the sentencing hearing record that the trial court failed to advise Sanchez of his right to appeal. Sanchez, however, did not raise this issue in his section 2255 motion. The Government concedes that, in spite of this omission, "because appellant claims a denial of his constitutional right to appeal, his Rule 32(c) claim would be reviewed, in any event." Brief for Appellee at 18. We agree. The Supreme Court has shown an awareness of the formidable prob-

lems faced by section 2255 applicants who "prepare their petitions without the assistance of counsel" and who "may not even be aware of errors which occurred at trial." *Rodriquez v. United States*, 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969). In *Rodriquez*, the petitioner based his claim that he had been denied his right of appeal solely on the failure of his counsel to file one. *Id.* at 328, 89 S.Ct. at 1717. Nevertheless, the Court concluded *sua sponte* "from the trial transcript ... that the trial judge erroneously failed to advise petitioner of his right to appeal." *Id.* at 331, 89 S.Ct. at 1718. We follow the Court's example and reach the same conclusion here. Having done so, and because both parties have briefed the issue, we address the consequences of the trial court's error.

A majority of the circuits that have considered violations of Rule 32(a)(2) have held that a district court's failure to advise a defendant of his right to appeal constitutes error *per se* that requires an appellate court to vacate the sentence and remand for resentencing. *See United States v. Benthien*, 434 F.2d 1031, 1032 (1st Cir.1970); *Reid v. United States*, 69 F.3d 688, 689 (2d Cir.1995); *United States v. Deans*, 436 F.2d 596, 599 n. 3 (3d Cir.1971); *Paige v. United States*, 443 F.2d 781, 782 (4th Cir.1971); *United States v. Butler*, 938 F.2d 702, 703–04 (6th Cir.1991). *But see United States v. Drummond*, 903 F.2d 1171 (8th Cir.1990) (applying harmless error standard to Rule 32(a)(2) violation); *Tress v. United States*, 87 F.3d 188 (7th Cir.1996) (overruling previous *per se* rule and applying harmless error standard). The Ninth Circuit has stated that it "subscribes to the rationale behind the per se rule" but noted that there are "occasions where Rule 32(a)(2) admonishments are unnecessary," such as where the defendant has waived his right to appeal in a plea agreement. *Biro v. United States*, 24 F.3d 1140, 1142 (9th Cir.1994).

The rationale for holding that a Rule 32(a)(2) violation constitutes error *per se* is clear:

> The obvious purpose of Rule 32(a)(2) is to insure that all defendants who might wish to appeal are fully aware of their appeal rights. That purpose ... is best

served by allowing a section 2255 motion to reinstate an appeal whenever the trial court has failed to comply with the rule, without regard to whether or not the defendant had obtained knowledge of his rights from some other source.... Our holding insures that all defendants will receive the protection the rule was intended to provide. It will at the same time serve to warn district judges of the necessity of strict compliance.

*Benthien,* 434 F.2d at 1032. Moreover, "the policy of preventing excessive litigation [over whether the defendant had been fully informed of his rights by his counsel] justifies a strict and literal enforcement of Rule 32(a)(2)." *Reid,* 69 F.3d at 689. Accordingly, we join the majority of circuits that have considered the issue and hold that (1) the rule "is specific in its command," *Paige,* 443 F.2d at 782, and (2) the failure of the district court to advise Sanchez of his right to appeal his sentence was error *per se* that requires a remand for resentencing.

■ In its appellate brief, the Government argued that a remand would be pointless. Contending that "all of appellant's sentence-related claims were presumably raised in his § 2255 motion," the Government noted that

Appellant [had] raised approximately nine claims in his section 2255 motion, seven of which he has not raised on appeal from the denial of [that] motion. Since the district court's denial of these other seven claims ... are ripe for appellate review, appellant's decision to raise on appeal only two of these nine claims should properly be viewed as an abandonment of his other seven claims.... [A]ppellant has tested the waters on the merits of his sentence-related claims at the district court. Having proceeded in that manner ... appellant cannot now claim that the choice of proceeding on his substantive claims should not be counted against him or that he is entitled to yet another opportunity to litigate his sentence.

Brief for Appellee at 15–17. Furthermore, the Government maintained that Sanchez must be deemed to have "defaulted" any other sentence-related claims that he failed to raise in the section 2255 motion. It ac-

knowledged, as it must, that Sanchez did preserve his sentencing entrapment claim but argued that it is without merit. In order to avoid a remand, therefore, the Government requested that we review the entrapment claim now under the standard of review applicable to direct appeals, thus giving Sanchez the remedy to which he would be entitled were we to remand the case.

At oral argument, the Government offered an alternative approach. Again requesting that we review the entrapment claim under a direct appeal standard of review, the Government suggested that, should a remand for resentencing be necessary, we treat as having been abandoned only those issues raised in the section 2255 motion that Sanchez did not pursue on this appeal. Under this approach, Sanchez could bring any as-yet-unidentified claims on a direct appeal from his new sentence.

■ While we remand the case for resentencing to enable Sanchez to proceed with his appeal, we resolve the entrapment claim in part B, infra, as both parties request. We reject, however, the suggestion that Sanchez is limited, on direct appeal, to only those sentence-related challenges that he failed to raise in his motion. The Supreme Court has stated that the "rules of procedure do not require sacrifice of the rules of fundamental justice." *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). Further, *pro se* litigants are held to less stringent standards than those who are counseled by attorneys. *Cf. Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (holding *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). Courts will go to particular pains to protect *pro se* litigants against the consequences of technical errors if injustice would otherwise result. *See Beavers v. Lockhart,* 755 F.2d 657, 662 (8th Cir.1985) (addressing claim not raised in *pro se* petitioner's habeas motion); *Hanson v. Circuit Court of the First Judicial Circuit of Illinois,* 591 F.2d 404, 408 n. 8 (7th Cir.1979) (addressing claim raised for first time on appeal "in accordance with the policy of the courts to remove technical obstacles in lawsuits brought by *pro se* prison-

ers"). *Council v. Clemmer*, 165 F.2d 249, 250 (D.C.Cir.1947) (permitting *pro se* habeas petitioner to amend his petition). To be sure, we do not license prisoners proceeding *pro se* to disregard the rules of procedure; we merely refuse to compound the deprivation of Sanchez's right to appeal by treating his later section 2255 motion as his only bite at the apple for the claims raised there.

Because Sanchez had not been advised of his right of appeal, he was denied the opportunity to raise his sentencing-related claims under the more lenient standards that would have applied had he appealed his sentence in the normal course. Instead, Sanchez was required to challenge his sentencing collaterally by filing a section 2255 motion, which he drafted without the benefit of an attorney who could have counseled him to limit his claims to those essential to his collateral attack, namely, the trial court's failure to advise him of his right to appeal.

■ In a section 2255 proceeding involving claims that he could have brought but failed to bring on direct appeal, the movant must establish both cause for the procedural default and actual prejudice resulting from the claimed error. *See, e.g., United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982); *United States v. Kleinbart*, 27 F.3d 586, 590 (D.C.Cir.1994). Thus to have pursued, in this appeal, the substantive sentencing-related claims that Sanchez unnecessarily raised in his motion would have subjected them to the more stringent "cause and prejudice" standard that applies in proceedings seeking collateral relief. *See United States v. Pollard*, 959 F.2d 1011, 1020 (D.C.Cir.1992) ("in a § 2255 collateral challenge, an appellant, in order to gain relief . . . is obliged to show a good deal more than would be sufficient on a direct appeal from his sentence"). On the other hand, had these claims not been included in his motion, there is no question that, following remand and resentencing, Sanchez would have been free to pursue all of his substantive sentence-related claims under the more lenient review standards that are applicable to direct appeals.

■ In light of these circumstances, and to "insure[ ] that [Sanchez] will receive the protection [Rule 32(a)(2) ] was intended to provide," *Benthien*, 434 F.2d at 1032, we will not penalize him for the overinclusiveness of his section 2255 motion. Accordingly, we will allow him to raise all of his substantive challenges in a new appeal with the exception of the sentencing entrapment claim, which we will now address. We note, of course, that Sanchez's guilty plea precludes him from challenging the conviction itself. *See United States v. Fitzgerald*, 466 F.2d 377, 379 (D.C.Cir.1972) (voluntary guilty plea waives right to assert defense to conviction).

## B. Entrapment

■ Because Sanchez faces resentencing on remand, we are not required to address his entrapment claim at this time. We do so, however, because the parties agree that the issue was raised below, was considered by the trial court, was briefed on appeal, and is ripe for review. We also note that Sanchez understands that he forfeits further review of this issue. Under these limited circumstances, and because both parties have agreed to accept a direct appeal standard of review, we shall apply that standard.

In his section 2255 motion, Sanchez argued that the Government entrapped him into selling crack rather than powder cocaine so that it could impose the harsher sentence applicable to crimes involving cocaine base. *See United States Sentencing Commission, Guidelines Manual* § 2D1.1(c) (listing higher base offense level for crack than for similar quantity of powder); *see also United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir.1994) ("Sentencing entrapment . . . occurs when a defendant, although predisposed to commit a minor or lessor offense, is entrapped in committing a greater offense subject to greater punishment.") (internal quotation marks omitted). In support of his claim, Sanchez asserts that, although he "repeatedly requested" that the informant buy powdered cocaine, Brief in Support of U.S.C. § 2255 Motion at 9, the informant "encouraged Mr. Sanchez to cook the crack cocaine and provide a specific amount of it to the informant, rather than simply selling the informant the cocaine powder and permitting the informant to cook it himself." Brief for Appellant at

16. He concludes that, because he was predisposed to distribute only powder cocaine, the base offense level of his sentence should reflect that he sold powder, as opposed to crack. The district court rejected this argument, stating:

> Defendant pled guilty to conspiracy, the object of which was to distribute cocaine base, and the record does not support any inference of improper motives or actions by law enforcement officials in purchasing cocaine base from the defendant. Without such a record, the Court cannot conclude that application of the guideline range for powder cocaine would have been appropriate.

*United States v. Sanchez,* Crim. No. 93–0086 at 2.

■ Pointing to the district court's statement that there was no evidence of "improper [Government] ... actions," Sanchez maintains on appeal that the court improperly treated his claim as one of "outrageous government conduct." *See United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) ("[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."). *See also United States v. Walls,* 70 F.3d 1323, 1329–30 (D.C.Cir.1995) (rejecting claim of outrageous government conduct as basis for reduction in sentence), *cert. denied,* ─── U.S. ───, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996). Sanchez argues that the standard entrapment defense required the court to determine instead whether there was any evidence of inducement, which would have shifted the burden to the Government to demonstrate the defendant's predisposition to commit the crime.

■ With due respect, we believe the standard applied by the district court is consistent with our normal "bifurcated approach" to an entrapment defense, which we have described as follows:

> [T]he defendant bears an initial burden of demonstrating inducement; once the defendant meets that burden, the ultimate burden of persuasion shifts to the government to prove predisposition. *Inducement is government behavior that would cause an unpredisposed person to commit a crime.* Here the district court found no threats, no fraudulent misrepresentations, no solicitation, no improper persuasion that would constitute inducement.

*United States v. Salmon,* 948 F.2d 776, 779 (1991) (internal quotation marks and citations omitted, emphasis added). Thus, the district court first had to determine whether the Government's behavior was such that it could have induced an unpredisposed person to sell crack cocaine. This determination requires an objective analysis:

> Inducement focuses on whether the government's conduct could have caused an undisposed person to commit a crime. It is thus an objective inquiry measuring whether the government's behavior was such that a law-abiding citizen's will to obey the law could have been overborne.

*United States v. Kelly,* 748 F.2d 691, 697 (D.C.Cir.1984) (citation omitted). Inducement involves

> "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship. A solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement."

*United States v. Burkley,* 591 F.2d 903, 913 (D.C.Cir.1978) (quoting standard jury instructions with approval).

In concluding that "the record does not support any inference of improper motives or actions by law enforcement officials in purchasing cocaine base from the defendant," Order at 2, the district court was merely saying that it had found no evidence of inducement as so defined. Accordingly, we hold that the district court did not erroneously treat Sanchez's claim as one of "outrageous government conduct."

## III. CONCLUSION

Sanchez was denied his right to appeal his sentence by the failure of the district court to advise him of this right, as required by the Federal Rules of Criminal Procedure. Be-

cause this constitutes error *per se,* we vacate the sentence and remand the case to the district court for resentencing so that Sanchez may file a direct and timely appeal. Finally, we hold that the district court did not err in its disposition of Sanchez's sentencing entrapment claim; accordingly, Sanchez is barred from raising that issue in a subsequent appeal.

The case is remanded for proceedings consistent with this opinion.

*So ordered.*