# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 11, 2013          Decided March 21, 2014

No. 12-3043

UNITED STATES OF AMERICA,
APPELLEE

v.

PAUL SOLOFA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00250-1)

———

*Misha Tseytlin*, appointed by the court, argued the cause for appellant. On the briefs were *Matthew D. McGill* and *Erik R. Zimmerman*, appointed by the court.

*John-Alex Romano*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Mythiili Raman*, Acting Assistant Attorney General, and *Raymond N. Hulser*, Principal Deputy Chief, Public Integrity Section. *Kathleen A. Felton* and *Daniel A. Petalas*, Attorneys, U.S. Department of Justice, and *Elizabeth Trosman*, Assistant U.S. Attorney, entered appearances.

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

GRIFFITH, *Circuit Judge*: A jury convicted appellant Paul Solofa of witness tampering and obstruction of justice, and the district court sentenced him to 35 months in prison. Solofa challenges his conviction on the ground that his trial counsel provided ineffective assistance and his sentence on the ground that the district court improperly applied an enhancement under the Sentencing Guidelines. For the reasons set forth below, we affirm.

I

In 2008, the FBI undertook an investigation that uncovered a kickback scheme that defrauded the Department of Education (DOE) of American Samoa. The scheme was simple. Gustav Nauer, DOE's head mechanic, ordered school-bus parts from Oscar Mayer, who ran a company called Pacific Products, Inc. Mayer would not ship the parts, but Nauer would submit paperwork to the DOE vouching that he had. Mayer would then funnel to Nauer some of the funds he received from the DOE for the parts he never delivered. All told, between 2003 and 2006 Mayer paid Nauer nearly $300,000 for his involvement in this fraud. It isn't entirely clear, nor is it relevant to this appeal, precisely what role Solofa played in the plot. He was the chief financial officer of DOE during the first year of the scheme and was friends with Mayer. At the very least, Solofa knew about the kickback scheme and accepted hush money from Nauer to keep quiet about it. No bribery or fraud charges were brought against Solofa, and this case is not about his role in defrauding the DOE. This case is about Solofa's role in the FBI investigation of that fraud.

The investigation led to Mayer's door, and he was called into the FBI's office to be interviewed about his role in the

scheme. During the interview, the FBI agents confronted Mayer with evidence of his complicity. Mayer did not respond to the allegations during the interview, but his lawyer, who was present, told the agents that Mayer would "get back" to them. In a private discussion after they left the interview, his lawyer advised Mayer to "tell them everything." The next day, Mayer returned to the FBI office with his lawyer and fully acknowledged his part in the fraud. Mayer also agreed to cooperate with the FBI's ongoing investigation of the scheme in exchange for a recommendation of leniency from the FBI to the prosecutor. The FBI arranged for Mayer to secretly record conversations with Solofa and Nauer that were intended to draw out what they knew about the kickbacks. In his first conversation with Solofa, Mayer did as the FBI instructed and told Solofa that FBI agents had mentioned him by name when explaining that they needed to interview Mayer. Mayer voiced concern about his upcoming interview with the FBI, putting on an air of anxiety, and asked Solofa what he should say and do during the questioning. In response, Solofa told Mayer to deny giving cash to Nauer and suggested that he tell the FBI that he and Solofa had never had any dealings with one another regarding school-bus parts. Solofa added that the FBI could not trace their transactions, because all of them were made in cash.

For the next conversation, the FBI gave Mayer a fake subpoena seeking various documents from Pacific Products and told him to show it to Solofa as if it were genuine. Mayer did so, and asked Solofa how he should respond to the subpoena. Solofa told Mayer not to "hide anything" and to "[j]ust give them copies of everything." Solofa repeated this advice, telling Mayer that he had to produce everything that the FBI asked for. He even explained the best procedures for

responding fully. But, significantly, Solofa then changed course and reminded Mayer that "only you know[] everything. . . . So don't give them any copy you don't want to give them." More than that, Solofa told Mayer to "burn" the copies of any documents that "you don't want to give them" because that way "they won't see it and you won't worry that they might see it." If Mayer burned a document, Solofa pointed out, then "nobody has a copy."

After hearing the recordings of these conversations, a grand jury returned an indictment charging Solofa with witness tampering in violation of 18 U.S.C. § 1512(b)(3) and obstruction of justice in violation of 18 U.S.C. § 1503. At trial, Solofa's primary defense to both charges was that he lacked the requisite intent because he had no motivation to conceal the workings of a kickback scheme in which he had no part. The jury was not persuaded, and convicted Solofa on both counts. The Guidelines range for each offense was 15-21 months. At sentencing the district court applied an enhancement to Solofa's base sentence because the offense "involved obstructing the investigation or prosecution of a criminal offense" as opposed to a civil or administrative investigation. U.S.S.G. § 2J1.2(c)(1). The enhancement called for by (c)(1) resulted in a Guidelines range of 41-51 months for each offense. The court subtracted six months because, as a non-citizen, Solofa would not be able to spend that time in a halfway house. When all was said and done, the district court sentenced Solofa to 35 months for each offense, to be served concurrently. Solofa's counsel objected to the district court's use of the enhancement, arguing that although (c)(1) could be lawfully used to enhance a sentence based on Solofa's crimes, its application to him resulted in a sentence that, compared to Nauer's sentence of 25 months, was arbitrary and longer than necessary.

Solofa timely appealed his conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

II

Solofa challenges his conviction on the ground that his trial counsel gave him ineffective assistance by failing to raise an entrapment defense. To make out a case of ineffective assistance, an appellant must show not only that counsel's performance was deficient, but that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The prejudice inquiry focuses on whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where the error claimed is a failure to pursue an affirmative defense, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Solofa's argument founders on this requirement because he had no entrapment defense to raise.

Entrapment "has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). A defendant arguing entrapment must show that "the criminal design originate[d] with the officials of the government, and [that] they implant[ed] in the mind of an innocent person the disposition to commit the alleged offense and induce[d] its commission in order that they may prosecute." *Sorrells v. United States*, 287 U.S. 435, 442 (1932). At a minimum, this

requires a showing that the government agent actually solicited or suggested the criminal conduct. *See United States v. Russell*, 411 U.S. 423, 436 (1973) (government deception does not constitute inducement unless the idea for the crime originated with the government agent); *Sherman v. United States*, 356 U.S. 369, 372-73 (1958); *Sorrells*, 287 U.S. at 439-41; *United States v. Borum*, 584 F.2d 424, 428 (D.C. Cir. 1978). There is no suggestion in the record that Mayer asked or encouraged Solofa to tamper with a witness, obstruct justice, or participate in any form of criminal activity. Mayer simply stated that he had been contacted by the FBI and asked Solofa what he should do in response. Solofa could have given a wide variety of meaningful, lawful answers to the question; he chose instead to suggest that Mayer lie and burn documents.

That Mayer lied to Solofa about the investigation is no help to Solofa's argument. "[N]ot all fraudulent misrepresentations constitute inducement . . . ." *United States v. Burkley*, 591 F.2d 903, 913 n.18 (D.C. Cir. 1978) (internal quotation marks omitted). They might "when the Government's deception actually implants the criminal design in the mind of the defendant," *Russell*, 411 U.S. at 436, but Solofa makes no claim that Mayer suggested the criminal activity. Instead, Solofa urges upon us a rule that any misrepresentation by the FBI absolves him of responsibility for the choice he made to tell Mayer to destroy evidence of a crime. But banning the use of undercover agents, which is essentially what Solofa is asking for, would "severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings." *Lewis v. United States*, 385 U.S. 206, 210 (1966); *id.* at 208-09 ("Indeed, it has long been acknowledged by the decisions of this Court that, in the detection of many types of crime, the

Government is entitled to use decoys and to conceal the identity of its agents." (citations and footnote omitted)). In the context of entrapment, the Court has long held that "[a]rtifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrells*, 287 U.S. at 441. In *Russell*, an undercover government agent perpetrated an elaborate deception, playing the part of a drug dealer. 411 U.S. at 426. But "the mere fact of deceit," which is what Solofa relies upon here, could not "defeat [the] prosecution." *Id.* at 435-36; *see also Jacobson v. United States*, 503 U.S. 540, 548 (1992) (observing, in an entrapment case, that "there can be no dispute that the Government may use undercover agents to enforce the law").

Solofa also argues that Mayer induced the crimes by invoking their friendship. Although we have raised the possibility that "pleas based on . . . friendship can satisfy the inducement prong," we have yet to find an instance where they have been sufficiently strong to do so. *United States v. Evans*, 216 F.3d 80, 90 (D.C. Cir. 2000) (internal quotation marks omitted). In any event, a resort to the bonds of friendship can only be an inducement if it is a plea to break the law. Even assuming that Mayer's words and conduct elicited feelings of friendship from Solofa, the fact remains that Mayer never asked or suggested that he engage in criminal activity. *See id.* (finding no inducement where the defendant "independently decided to provide the drugs out of friendship," not "because of any plea from" his friend). This case is thus a far cry from *Sherman v. United States*, cited by Solofa. There, an informant played on the defendant's sympathy by pretending to be an addict struggling toward recovery and expressly and repeatedly asking for illegal narcotics. *See* 356 U.S at 371, 373. At most, Mayer provided Solofa the opportunity to obstruct an investigation and tamper

with a witness, but Solofa made the decision to commit these crimes on his own. To make out the defense of entrapment, it is not enough that the "government merely afford[ed] opportunities or facilities for the commission of the offense." *Sorrells*, 287 U.S. at 441; *see also Mathews*, 485 U.S. at 66.

Given that Mayer did not suggest, solicit, or encourage Solofa's participation in any criminal activity, his counsel had no viable entrapment defense to invoke. This conclusion is so clear from the record that there is no need to remand Solofa's ineffectiveness claim to the district court for factual development. *See United States v. Bell*, 708 F.3d 223, 225 (D.C. Cir. 2013).

Because Solofa cannot show that his counsel's failure to invoke the defense of entrapment prejudiced him, we need not address whether his counsel's decision not to pursue the defense was somehow an unprofessional error. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

III

The district court sentenced Solofa under section 2J1.2 of the Guidelines to concurrent sentences of the same length, one for witness tampering, the other for obstruction of justice. Section 2J1.2(c)(1) provides for an enhancement where "the offense involved obstructing the investigation or prosecution of a criminal offense." U.S.S.G. § 2J1.2(c)(1). Solofa, who was convicted of attempting to tamper with a witness and obstruct justice, argues that (c)(1) does not reach his crimes. That enhancement, he maintains, applies only to those cases

in which a defendant actually tampers with a witness or obstructs an investigation and not where he only makes the attempt. Appellant's Br. 38. Nowhere in the text of (c)(1), Solofa observes, is there mention of "attempt" or "intent" or "effort" or "purpose," the words used elsewhere in the Guidelines to capture inchoate crimes. *Id.* at 38-40. But Solofa raises this argument for the first time on appeal, and we can consider its merits only under plain error review. *See In re Sealed Case*, 573 F.3d 844, 847 (D.C. Cir. 2009).

An error is plain only when the district court failed to follow an "absolutely clear legal norm." *United States v. Purvis*, 706 F.3d 520, 524 (D.C. Cir. 2013) (internal quotation marks omitted). Here, every circuit to consider the issue has held that the (c)(1) enhancement covers attempts. *See United States v. Gallimore*, 491 F.3d 871, 876 (8th Cir. 2007); *United States v. Giovanelli*, 464 F.3d 346, 354 (2d Cir. 2006); *United States v. Brenson*, 104 F.3d 1267, 1284-85 (11th Cir. 1997); *United States v. Aragon*, 983 F.2d 1306, 1315-16 (4th Cir. 1993); *see also United States v. Flemmi*, 402 F.3d 79, 96 n.27 (1st Cir. 2005); *United States v. Roche*, 321 F.3d 607, 610 n.2 (6th Cir. 2003). We cannot say that there is "an absolutely clear legal norm" against applying (c)(1) to attempts when six of our sister circuits have unanimously ruled otherwise. *See United States v. Andrews*, 532 F.3d 900, 909 (D.C. Cir. 2008) (finding the absence of plain error partly because of a circuit split on the issue); *United States v. Sullivan*, 451 F.3d 884, 896 (D.C. Cir. 2006) (same). Solofa's sentence stands.

IV

For the foregoing reasons, we affirm Solofa's conviction and sentence.